**THE HONORABLE JAMES L. ROBART**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AVENTA LEARNING, INC., a Washington corporation; MICHAEL J. AXTMAN; JAMES J. BENITEZ; DR. RONALD P. BENITEZ; ELIZABETH A. BENITEZ; ROBERT E. HARBISON; and SUZANNE M. HARBISON,<br><br>Plaintiffs,<br><br>v.<br><br>K12, INC., a Delaware corporation; KAYLEIGH SUB TWO LLC, a Delaware limited liability company; and KC DISTANCE LEARNING, INC., a Delaware corporation,<br><br>Defendants. | NO. 2:10-cv-01022-JLR<br><br>**AMENDED COMPLAINT FOR RESCISSION OR, IN THE ALTERNATIVE, FOR DAMAGES AND FOR DECLARATORY RELIEF**<br><br>**JURY DEMAND** |

Plaintiffs Aventa Learning, Inc. ("Aventa"), Michael J. Axtman ("Axtman"), James J. Benitez ("Benitez"), Dr. Ronald P. Benitez, Elizabeth A. Benitez, Robert E. Harbison, and Suzanne M. Harbison, for causes of action against defendants K12, Inc. ("K12"), Kayleigh Sub Two LLC ("Kayleigh"), KC Distance Learning, Inc. ("KCDL"), allege as follows:

### I.    PRELIMINARY STATEMENT

1.    Pursuant to an Asset Purchase Agreement dated January 10, 2007 (the "APA"), KCDL acquired substantially all of the assets in Aventa, a Washington company owned by the individual plaintiffs, in exchange for, among other things, a phantom equity

AMENDED COMPLAINT- 1

interest based on a formula tied to KCDL's earnings before interest, taxes, depreciation and amortization ("EBITDA") for a twelve month period of plaintiffs' choosing. Prior to closing, KCDL provided plaintiffs with a "5 year model" reflecting the EBITDA targets KCDL expected to receive for the five years following acquisition. Plaintiffs recently discovered that the 5 year model was not generated in good faith and was not, as it was represented to be, KCDL's best estimate of expected EBITDA. Instead, the model was created based on arbitrary target numbers supplied to KCDL's management by KCDL's parent company, Knowledge Universe Learning Group, LLC ("Knowledge Learning"). In reality, KCDL's management's expectations for EBITDA were substantially lower than those reflected in the 5 year model that was supplied to plaintiffs before the APA was signed.

## II.  JURISDICTION AND VENUE

2. Pursuant to Section 9.10 of the APA, venue is proper in this Court by express agreement of the parties, because the parties to the APA "EACH IRREVOCABLY CONSENT TO THE NON-EXCLUSIVE VENUE AND JURISDICITION OF ANY STATE OR FEDERAL COURT LOCATED IN KING COUNTY, WASHINGTON." Defendant KCDL removed this action from King County Superior Court to this Court based on diversity jurisdiction.

3. Pursuant to Section 9.09 of the APA, the law of the State of Washington governs this action.

## III.  PARTIES

4. Plaintiff Aventa is a Washington corporation, which helps schools bring their educational curricula online.

5. The individual plaintiffs, Axtman, Benitez, Dr. Ronald P. Benitez, Elizabeth A, Benitez, Robert E. Harbison and Suzanne M. Harbison, are the sole shareholders in Aventa and executed the APA.

6. Defendant K12 is a Delaware corporation and a public company traded on

AMENDED COMPLAINT- 2

New York Stock Exchange.

7.   Defendant Kayleigh is a Delaware limited liability company and a wholly owned subsidiary of K12.

8.   Defendant KCDL was a Delaware corporation with its principal place of business in Portland, Oregon.

## IV.   FACTUAL ALLEGATIONS

### A.   Brief History of Aventa.

9.   Plaintiffs Axtman and Benitez founded Aventa in 2002 in order to help schools bring their educational curricula online.

10.   Since its founding, Aventa has partnered with more than 1,800 school districts and organizations around the country to bring online courses to middle school and high school students in Grades 6-12.

11.   During the period from 2002 through 2007, when Aventa sold to KCDL, Aventa grew to offer online courses in more than 100 subjects.

### B.   KCDL Acquires Aventa for Cash and Phantom Equity in KCDL.

12.   In late 2006, KCDL began talks to Aventa to acquire the business.

13.   On October 26, 2006, the parties signed a Letter of Intent (the "LOI") outlining the basic terms of the transaction.  A portion of the total consideration was to be cash, a portion would be tied to an earnout formula, and a portion would be phantom equity. Specifically, the LOI reflected that plaintiffs would be granted a "Phantom Equity Interest" in KCDL "equal in value to three percent (3%) of the outstanding equity in KCDL."

14.   The parties continued to negotiate the equity portion of the transaction and, on November 30, 2006, the LOI was amended (the "Amendment") to reflect a revised equity figure of "six percent of the assumed equity value of KCDL."  The Amendment also confirmed the intent of the parties that the equity portion was expressly not compensation for the employment of any of the individual plaintiffs.  And the Amendment clarified that such

AMENDED COMPLAINT- 3

PETERSON YOUNG PUTRA
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-1609
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

payment would benefit "the Seller," which the LOI referenced as "Aventa or the Selling Stockholders," and not exclusively Axtman and Benitez as mistakenly reflected in the LOI. Accordingly, the formula in the Amendment reflected that KCDL would pay a percentage, "equal to six percent of the assumed equity value of KCDL" to plaintiffs.

15. The Amendment also provided that plaintiffs could, at their option, sell a portion of their phantom stock on three occasions.

16. In connection with the Amendment, plaintiffs asked for a calculation of KCDL's expected EBITDA and on or about November 30, 2006, KCDL's former CEO sent plaintiffs various due diligence items, including the 5 year model. The EBITDA information requested by plaintiffs was necessary for plaintiffs to evaluate the equity portion of the transaction and important to plaintiffs' investment decision.

17. The parties eventually signed the APA in January 2007, which provided for KCDL to acquire all or substantially all of Aventa's assets in return for cash, an earnout payment based on formula tied to KCDL's net revenues and EBITDA, and phantom equity in the form of an additional payment based on EBITDA achieved by KCDL in any given twelve month period elected by plaintiffs (the "Additional Earnout").

18. As reflected in the Amendment, the APA provides that the Additional Earnout is calculated based on a percentage, "equal to six percent (6%) of the Assumed Equity Value" of KCDL. The APA also provides plaintiffs the right, on three occasions, to require KCDL to purchase a portion of plaintiffs' equity interest.

**C.     The Parties Viewed the Transaction as an Investment.**

19. Throughout the negotiations and due diligence process in October and November 2006, KCDL's officers repeatedly assured plaintiffs that the transaction would "structure the equity in a way that meets" plaintiffs' objective of owning stock in KCDL.

20. Both before and after executing the APA, certain of KCDL's officers, directors, and controlling persons confirmed that the transaction provided plaintiffs with

AMENDED COMPLAINT- 4

"phantom stock," or "equity," in KCDL.  And KCDL's officers and controlling persons confirmed the transaction was an investment by plaintiffs in KCDL whereby plaintiffs' potential profits or losses from their equity interest was tied to KCDL's successes or failures.  KCDL's officers also stated that the intent and understanding was a transaction that included an "equity box."

21.  After the APA was executed, the individual plaintiffs were referred to as "owners" of KCDL via their equity interest, and plaintiffs understood and considered themselves to be owners of KCDL because they held phantom stock.  Those references to the individual plaintiffs as "owners" were made both in front of customers and in internal company communications.  KCDL, and its officers and controlling persons, did not deny, refute, or otherwise question such references to the individual plaintiffs as "owners" of KCDL.  In fact, Michael Milken, majority owner of KCDL, compared the individual plaintiffs' equity interest to "own[ing] 6% of Microsoft."

22.  The opening paragraph of the APA defines the APA as an agreement among KCDL, Aventa, and the individual plaintiffs.  And all of the individual plaintiffs are signatories to the APA.  Although labeled an asset purchase agreement, which was drafted by KCDL, KCDL assured plaintiffs that the transaction included an equity portion consistent with the parties' intent and understanding.  And KCDL represented that the transaction achieved plaintiffs' objective to invest in KCDL.

23.  Plaintiffs believed the transaction to be a cash and stock deal, and plaintiffs understood that they were receiving equity, in the form of "phantom stock," in KCDL.  Plaintiffs negotiated for, and were granted the right as reflected in the APA, to sell their phantom stock on three occasions.  And plaintiffs' ultimately agreed to accept less cash upfront than what they valued Aventa to be worth, with the understanding that they were making an investment in KCDL in exchange for the opportunity to receive additional profits from the equity portion of the transaction.

AMENDED COMPLAINT- 5

**D.   KCDL Fails to Make EBITDA Targets.**

24.   The 5 year model KCDL provided to plaintiffs in November 2006 was represented to plaintiffs to be a good faith calculation of KCDL's expected EBITDA following the acquisition of Aventa, was represented to be "conservative," and was represented to be the result of a diligent review of KCDL's performance and future prospects. The 5 year model was represented to be a rigorous and detailed bottoms-up analysis with supporting documentation.

25.   Specifically, KCDL represented in the 5 year model that EBITDA in year five would exceed $40 million, and the 5-year total would exceed $85 million. KCDL failed to disclose that the 5 year model was not based on actual business projections, real calculations, or genuine models.

26.   Throughout the negotiations and due diligence process in October and November 2006, KCDL's officers and controlling persons, including KCDL's former CEO, also represented that maximizing EBITDA, as opposed to a focus on revenue generation, was the current business plan and would remain the focus, as reflected in the 5 year model. KCDL failed to disclose that a shift in focus was already in process.

27.   Because plaintiffs were to receive equity in KCDL, the value of which was based on KCDL's EBITDA, Plaintiffs relied on the 5 year model, and KCDL's representations concerning maximizing EBITDA, in making their decision to execute the APA. In addition, plaintiffs would not have agreed to the transaction without the equity portion, because plaintiffs believed that they were selling the business too soon, and for too little cash up-front, so plaintiffs wanted the opportunity to receive additional profits based on their investment in KCDL.

28.   Beginning in 2008, it became apparent that KCDL was not achieving its EBITDA targets.

29.   Around this same time, plaintiffs learned that KCDL had shifted its

AMENDED COMPLAINT- 6

management bonus structure away from one that incentivized managers to focus on maximizing EBITDA.

30.   In addition, it appeared that KCDL was not capitalizing certain expenses, resulting in the artificial suppression of EBITDA.

31.   Axtman and Benitez met consistently with management in 2008 and 2009 to discuss issues relating to EBITDA calculation and the seeming shift within KCDL away from EBITDA maximization.  Plaintiffs were repeatedly assured that their EBITDA concerns were being investigated.

**E.   Plaintiffs Learn that the 5 Year Model was not a Good Faith Estimate of Future EBITDA and was False When Made.**

32.   In 2010, Axtman and Benitez learned, for the first time, that the 5 year model that had been provided to them pre-closing and upon which plaintiffs had relied in making their decision to execute the APA, was false and misleading.

33.   Specifically, Axtman and Benitez learned that the 5 year model was not a good faith estimate of KCDL's EBITDA projections and was, instead, based on arbitrary and inflated target numbers provided by KCDL's parent company, Knowledge Learning, and did not reflect what KCDL's management believed to be reasonable estimates of future EBITDA.

34.   Former KCDL officers stated that the 5 year model did not, as previously represented, reflect accurate calculations, generated in good faith, based on real business forecasts.  Former KCDL officers also stated that the numbers in the 5 year model were manipulated and, in particular, the numbers for the later years of the 5 year model were "pulled out of their ass."

35.   Axtman and Benitez also learned that, despite KCDL's representations to the contrary as reflected in the 5 year model, KCDL was already in the process of shifting focus to revenue generation, and away from maximizing EBITDA, prior to the execution of the

AMENDED COMPLAINT- 7

APA. In contrast to the representations made to plaintiffs, the undisclosed plan was to shift focus away from EBITDA.

### F. KCDL Refuses to Provide Plaintiffs With Documents Necessary for an Independent Evaluation of EBITDA and KCDL's Accounting Practices.

36. Pursuant to Section 2.03(c)(vi) of the APA, plaintiffs are entitled to "reasonable access to such information as the Seller shall reasonably request relating to Purchaser's EBITDA."

37. Plaintiffs have requested, pursuant to the APA, information and documents from KCDL relating to the computation of EBITDA and KCDL's accounting practices relative to EBITDA. Such information is needed before plaintiffs can make an informed decision as to when to elect to invoke their rights to receive the Additional Earnout.

38. KCDL has refused to provide plaintiffs with the necessary financial and accounting information.

### G. KCDL is Acquired by K12 and K12 and/or Kayleigh Assumed KCDL's Liabilities.

39. On July 26, 2010, without prior notice to plaintiffs, K12 and/or KCDL publically announced that K12 acquired KCDL. K12's acquisition of KCDL was an "all stock acquisition." K12's press release touts Aventa as one of "three brands" purportedly acquired by K12.

40. Upon information and belief, the acquisition documents publically filed with the Securities and Exchange Commission ("SEC") reference plaintiffs' claims for rescission (without actually using the word "rescission") as the "Specified Dispute."

41. Upon information and belief, K12 and/or Kayleigh assumed, or is the assignee of, KCDL's liabilities. The publically filed acquisition documents provide that KCDL entered into an "Assignment and Assumption Agreement" and a "Joint Litigation Agreement" concerning the "Specified Dispute." The publically filed acquisition documents also provide that KCDL's parent "shall assume and control the defense of the Specified

AMENDED COMPLAINT- 8

Dispute."

42. Plaintiffs have requested copies of certain non-publically filed documents concerning K12's acquisition of KCDL. KCDL has refused to provide such information.

## V. CAUSES OF ACTION

**First Cause of Action: Violation of the Securities Act of Washington (RCW 21.20 *et seq.*)**

43. Plaintiffs hereby incorporate all prior averments of fact.

44. The Securities Act of Washington applies to the APA and the transaction that resulted in the APA. The parties intended and understood the transaction to be an investment by plaintiffs in KCDL, and the parties treated the transaction as an investment by plaintiffs in KCDL. In addition, the parties intended and understood that plaintiffs received equity in KCDL, and that plaintiffs' potential profits or losses from their equity interest was tied to KCDL's successes or failures.

45. KCDL has violated the Securities Act by making untrue statements of material fact and/or omitting to state material facts necessary to make statements made not misleading in light of the circumstances under which they were made in connection with KCDL's acquisition of Aventa's assets.

46. Plaintiffs have been substantially injured in that, without knowledge of KCDL's material misrepresentations and omissions of material facts, they accepted an artificially reduced price for Aventa's assets. Plaintiffs would not have approved the transaction and signed the APA if they had been aware of the material information concealed by KCDL.

47. KCDL (and/or K12 or Kayleigh as a result of assuming, or as the assignee of, KCDL's liabilities) is liable for the aforesaid misrepresentations and omissions as sellers under the Securities Act.

48. By and through this complaint, plaintiffs agree to tender, before entry of judgment, any and all consideration paid to them by KCDL and acquired by them pursuant to

AMENDED COMPLAINT- 9

the APA.

49. Plaintiffs are entitled, under the Securities Act of Washington, to rescission of the APA and hereby elect the remedy of rescission.

50. Plaintiffs are entitled to an award of interest at eight percent per annum and reasonable attorneys fees that they have incurred as a result of KCDL's violation of the Securities Act and are entitled to all other or further remedies as provided by Washington law.

**Second Cause of Action:  Misrepresentation**

51. Plaintiffs hereby incorporate all prior averments of fact.

52. Plaintiffs entered into the APA based on, among other things, the promises, representations and warranties made to them in the due diligence process and reflected in the information provided to them in due diligence, including the 5 year model.

53. Plaintiffs would not have entered into the APA but for those representations.

54. The representations made in due diligence and in connection with the 5 year plan were material to the transaction, and the transaction would not have occurred in the absence of those representations.

55. KCDL failed to disclose the true nature of the 5 year model and its true estimates for EBITDA.

56. Plaintiffs therefore relied on the representations made in the 5 year model and in connection with the due diligence process.

57. Plaintiffs had a right to rely on KCDL's representations regarding KCDL's good faith estimation of future EBITDA.

58. KCDL's failure to disclose the true EBITDA expectations and misrepresentations in connection with the 5 year plan were therefore a material misrepresentation or omission.

59. Plaintiffs have been harmed by KCDL's misrepresentations.

AMENDED COMPLAINT- 10

PETERSON YOUNG PUTRA
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-1609
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

60. Plaintiffs are entitled to rescission or, in the alternative, damages for KCDL's misrepresentations.

### Third Cause of Action:
### Breach of the Implied Covenant of Good Faith and Fair Dealing

61. Plaintiffs hereby incorporate all prior averments of fact.

62. Plaintiffs are entitled to an Additional Earnout based on KCDL's EBITDA.

63. KCDL's shift in focus from EBITDA generation to other models of incentivizing management and measuring company performance frustrates the purpose of the APA and is a violation of KCDL's good faith obligations under the APA not to undermine the measure of compensation agreed to in connection with the transaction.

64. KCDL has taken steps in connection with its accounting practices that also have the effect of artificially suppressing EBITDA and limiting plaintiffs' recovery under the Additional Earnout.

65. KCDL's actions have injured plaintiffs' rights under the APA.

66. Plaintiffs have been damaged by KCDL's actions in an amount to be proven.

### Fourth Cause of Action:  Claim for Declaratory Relief

67. Plaintiffs hereby incorporate all prior averments of fact.

68. Based on the foregoing and pursuant to RCW 7.24.010-.050, plaintiffs request the Court declare, adjudge and decree that plaintiffs are entitled to reasonable access to KCDL's information and documents relating to EBITDA and the booking of transactions effecting EBITDA and that KCDL (and/or K12 or Kayleigh as a result of assuming, or as the assignee of, KCDL's liabilities) is in violation of APA by failing to provide plaintiffs with the information and documents they are entitled to under the APA.  Specifically, and without limitation: plaintiffs seek a declaration that they are entitled to: (a) detailed financials by business unit and by period; (b) detailed pro-forma; (c) period reports of actual vs. budget; (d) a list of capital projects and dollars spent against them; (e) all 5 year models; (f) copies of

AMENDED COMPLAINT- 11

PETERSON YOUNG PUTRA
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-1609
PHONE:  (206) 624-6800
FAX:  (206) 682-1415

audit reports; and (g) all other information reasonably necessary for an evaluation of EBITDA and KCDL's expenditures and accounting practices.

69. Plaintiffs further reserve their rights to seek injunctive relief to enforce any aspect of the Court's declaratory order, if Defendants fail to fully comply.

**Fifth Cause of Action:  Constructive Trust, Injunctive Relief, and Accounting**

70. Plaintiffs hereby incorporate all prior averments of fact.

71. Upon information and belief, Defendants K12 and/or Kayleigh is in possession of KCDL, including Aventa's assets that KCDL acquired pursuant to the APA.

72. Defendants K12 and Kayleigh were aware of plaintiffs' claims for rescission prior to K12's acquisition of KCDL.

73. Defendants K12 and/or Kayleigh have wrongfully retained, and/or have been unjustly enriched by their wrongful possession of, Aventa's assets.

74. Plaintiffs are entitled to a constructive trust over Aventa's assets, and/or an injunction, accounting, or other equitable relief, to preserve plaintiffs' request for rescission or, in the alternative, account for damages to plaintiffs.

## VI.   PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment against Defendants as follows:

A. That a constructive trust, and/or an injunction, accounting, or other equitable relief, be granted preserving plaintiffs' request for rescission;

B. That plaintiffs be awarded rescission of the APA;

C. That plaintiffs be awarded their reasonable attorneys' fees, litigation expenses, and costs of suit as provided under the APA and as provided under RCW 21.20, *et seq*., and as may be further permitted under Washington law;

D. Or, in the alternative, that plaintiffs be awarded damages and attorneys' fees and costs;

E. That the Court declare that KCDL has breached the APA by failing to provide

AMENDED COMPLAINT- 12

plaintiffs with reasonable access to KCDL's information and documents relating to EBITDA and the booking of transactions effecting EBITDA;

  F. That an accounting, or other equitable relief, be ordered to account for Aventa's assets and damages to plaintiffs; and

  G. For such other and further relief as the Court deems proper and just.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

DATED this 30th day of August, 2010.

             **PETERSON YOUNG PUTRA**

             *s/ Michael A. Goldfarb*
             Michael A. Goldfarb, WSBA No. 13492
             Anthony Todaro, WSBA No. 30391
             Christopher M. Huck, WSBA No. 34104

             Attorneys for plaintiffs

AMENDED COMPLAINT- 13

PETERSON YOUNG PUTRA
1501 FOURTH AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-1609
PHONE: (206) 624-6800
FAX: (206) 682-1415